UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PIJUS LUKOSEVICIUS,<br><br>                    Plaintiff,<br><br>          -against-<br><br>CIMAREX ENERGY CO., THOMAS E. JORDEN, PAUL N. ECKLEY, HANS HELMERICH, KATHLEEN A. HOGENSON, HAROLD R. LOGAN, JR., FLOYD R. PRICE, MONROE W. ROBERTSON, LISA A. STEWART, and FRANCES M. VALLEJO,<br><br>                    Defendants. | Case No.: _____<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, Pijus Lukosevicius ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.       This is an action brought by Plaintiff against Cimarex Energy Co. ("Cimarex" or the "Company") and the members of Cimarex's board of directors (the "Board" or the "Individual Defendants" and together with Cimarex, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition of Cimarex by Cabot Oil & Gas Corporation ("Cabot") (the "Proposed Merger").

2.       On May 23, 2021, the parties entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which Cimarex shareholders will receive 4.0146 shares of Cabot common stock for each share of Cimarex common stock owned (the "Merger Consideration").  Upon consummation of the Proposed Merger, Cabot shareholders will own

approximately 49.5% and Cimarex shareholders will own approximately 50.5% on a fully diluted basis.

3.      On June 29, 2021, in order to solicit Cimarex shareholders to vote in favor of the Proposed Merger, Defendants authorized the filing of a materially incomplete and misleading Registration Statement on Form S-4 (the "Registration Statement").

4.      In particular, the Registration Statement contains materially incomplete and misleading information concerning: (i) financial projections for Cimarex and Cabot, and (ii) the valuation analyses performed by Cimarex's financial advisor, Tudor, Pickering, Holt & Co. ("TPH").

5.      The special meeting of Cimarex shareholders to vote on the Proposed Merger is forthcoming (the "Shareholder Vote").  It is imperative that the material information that has been omitted from the Registration Statement is disclosed prior to the Shareholder Vote so Plaintiff can make an informed decision on the Proposed Merger and properly exercise his corporate suffrage rights.

6.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Merger until the material information discussed herein is disclosed to Cimarex's shareholders sufficiently in advance of the Shareholder Vote or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7.      This Court has original jurisdiction over this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff

alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over the Defendants by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman* 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* At 1316.

9.      Venue is proper in this District under Section 27 of the Exchange Act and 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, Cimarex's common stock trades on the New York Stock Exchange, which is headquartered in this District rendering venue in this District appropriate. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

10.      Plaintiff is, and at all relevant times has been, a shareholder of Cimarex.

11.      Defendant Cimarex is a Delaware corporation with its principal executive offices located at 1700 Lincoln Street, Suite 3700, Denver, Colorado 80203.  Cimarex's common stock trades on the New York Stock Exchange under the ticker symbol "XEC".

12.      Individual Defendant Thomas E. Jordan is, and has been at all relevant times, a director and the Chief Executive Officer, President and Chairman of the Board of Cimarex.

13.     Individual Defendant Paul N. Eckley is, and has been at all relevant times, a director of Cimarex.

14.     Individual Defendant Hans Helmerich is, and has been at all relevant times, a director of Cimarex.

15.     Individual Defendant Kathleen A. Hogenson is, and has been at all relevant times, a director of Cimarex.

16.     Individual Defendant Harold R. Logan, Jr. is, and has been at all relevant times, a director of Cimarex.

17.     Individual Defendant Floyd R. Price is, and has been at all relevant times, a director of Cimarex.

18.     Individual Defendant Monroe W. Robertson is, and has been at all relevant times, a director of Cimarex.

19.     Individual Defendant Lisa A. Stewart is, and has been at all relevant times, a director of Cimarex.

20.     Individual Defendant Frances M. Vallejo is, and has been at all relevant times, a director of Cimarex.

21.     The Individual Defendants referred to in ¶¶ 12-20 are collectively referred to herein as the "Individual Defendants" and with Cimarex they are referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### I.     Background and the Proposed Merger

22.     Cimarex is an exploration and production company with operations in Texas, New Mexico and Oklahoma.  The majority of the Company's activity is currently in the Permian Basin and the Anadarko Basin in Western Oklahoma.

23.     Cabot is an independent oil and gas company engaged in the exploration, development, and production of natural gas properties exclusively onshore in the United States.

24.     On May 24, 2021, Cimarex and Cabot issued a joint press release announcing the Proposed Merger, which states in relevant part:

### Cabot Oil & Gas and Cimarex Energy to Combine in All-Stock Merger of Equals

Creating a Premier, Diversified Energy Company with a Strong Free Cash Flow Profile; Positioned to Deliver Superior and Sustainable Returns

HOUSTON and DENVER, May 24, 2021 /PRNewswire/ -- Cabot Oil & Gas Corporation ("Cabot") (NYSE: COG) and Cimarex Energy Co. ("Cimarex") (NYSE: XEC) today announced that they have entered into a definitive agreement whereby the companies will combine in an all-stock merger of equals. The combination will bring together two industry-leading operators with top-tier oil and natural gas assets to create a diversified energy leader that is positioned to drive enhanced free cash ow generation and returns for investors through market cycles.

Under the terms of the agreement, which has been unanimously approved by the Boards of Directors of both companies, Cimarex shareholders will receive 4.0146 shares of Cabot common stock for each share of Cimarex common stock owned. The exchange ratio, together with closing prices for Cabot and Cimarex on May 21, 2021, reflects an enterprise value for the combined companies of approximately $17 billion. Upon completion of the transaction, Cabot shareholders will own approximately 49.5% and Cimarex shareholders will own approximately 50.5% on a fully diluted basis.

"The combination of Cabot and Cimarex will create a free cash flow focused, diversified energy company with the scale, inventory and financial strength to thrive across commodity price cycles," Dan O. Dinges, Chairman, President and CEO of Cabot. "The combined business will be overseen by an experienced Board and a management team that is committed to a prudent strategy built on disciplined capital investment, strong free cash flow generation and increasing returns to shareholders. With its premier assets, increased resource diversity and a strong financial foundation, the company will be well positioned to deliver long-term value creation for its shareholders and other stakeholders."

"This transformational merger will combine our top-tier assets and advance our shared focus on delivering superior returns for investors," said Thomas E. Jorden, Chairman, President and CEO of Cimarex. "We're building an even more resilient platform with greater financial strength in order to deliver sustainable, through-cycle returns on and of capital. We view commodity, geography and asset

diversification as strategic advantages that will drive more resilient free cash flow and long-term value creation. We are aligned on our commitment to ESG and sustainability and look forward to bringing our talented teams together to unlock the tremendous potential of this compelling combination."

**Strategic and Financial Benefits of Creating a Free Cash Flow Focused, Diversified Oil & Gas Producer**

- Premier Multi-Basin Exposure Will Enhance Scale, Diversity and Capital Optionality: With Cabot's approximately 173,000 net acres in the Marcellus Shale and Cimarex's approximately 560,000 net acres in the Permian and Anadarko basins, the combined business will have a multi-decade inventory of high-return development locations in the premier oil and natural gas basins in the United States.

- Attractive and Sustainable Free Cash Flow Profile: Executing a disciplined capital allocation and reinvestment strategy, the combined business will be positioned to capitalize on its high-quality assets and diversification to drive through-cycle free cash flow generation across a wide range of commodity price scenarios. The company's low-cost and capital efficient inventory is expected to support its robust, cumulative free cash ow outlook of approximately $4.7 billion of free cash ow from 2022 to 2024 based on $55 per barrel WTI oil prices and $2.75 per MMBtu NYMEX natural gas prices.

- Positioned to Accelerate the Return of Capital to Shareholders: The combined business will be well positioned to deliver enhanced capital returns to shareholders across a full range of market conditions through a multi-faceted program offering a sustainable base dividend that is positioned to grow over time, a variable dividend and a special dividend. The new business is expected to have an annual base dividend of $0.50 per share (representing a forward dividend yield of 2.8%), which is paid quarterly, and plans to supplement the base dividend with a quarterly variable dividend to achieve a target capital return of at least 50% of quarterly free cash flow, with the first payment expected in the first quarter of 2022. The combined business also plans to declare and pay a $0.50 per share special dividend to all common shareholders of the combined business promptly after the closing of the transaction.

- Substantial Cost Saving Opportunity: The companies are targeting annual general and administrative cost synergies of $100 million beginning within 18 months to two years following the closing.

- Strong Balance Sheet: The combined business is expected to have a strong capital structure with minimal near-term debt maturities and a low cost of capital. Upon closing, the combined business is anticipated to have pro forma liquidity of $2.2 billion and will target a net debt-to-EBITDAX ratio

of less than 1.0x. This strong financial foundation and broader scale is expected to provide flexibility and optionality for capital deployment.

- Commitment to ESG and Sustainability: Cabot and Cimarex share commitments to environmental stewardship, sustainability and strong corporate governance. The combined business will build on the two companies' ongoing ESG efforts by, among other things, continuing to link executive compensation to ESG performance and maintaining strong board oversight of ESG risks and programs. The combined business is expected to report sustainability metrics pursuant to SASB and TCFD standards.

**Headquarters, Leadership and Governance**

The combined business, which will operate under a new name, plans to be headquartered in Houston and maintain its regional offices.

Upon closing, Mr. Dinges will serve as Executive Chair of the Board of Directors of the newly combined business and Mr. Jorden will lead the company as CEO and will serve on the Board of Directors. Scott Schroeder, Cabot's current Chief Financial Officer, will serve as CFO of the combined business. The remainder of the company's leadership team will include executives from both Cabot and Cimarex. The Board of Directors of the company will be composed of five directors from the current Cabot Board of Directors, including Mr. Dinges, and five directors from the current Cimarex Board of Directors, including Mr. Jorden.

**Timing and Approvals**

The transaction is expected to close in the fourth quarter of 2021, subject to regulatory clearance, the approval of Cabot and Cimarex common shareholders and the satisfaction of other customary closing conditions.

Both Cabot and Cimarex intend to continue paying base quarterly cash dividends through closing.

**Joint Investor Call**

Cabot and Cimarex will hold an investor conference call and webcast at 8:30 AM ET / 6:30 AM MT to discuss the details of the transaction. The event can be accessed from the Investor Relations pages of Cabot's and Cimarex's websites at https://www.cabotog.com/investor-relations/default.aspx                 and https://www.cimarex.com/investorrelations/overview/default.aspx.

**Conference Call Information**
Dial-In (for callers in the U.S.): 1-866-367-3053
Dial-In (for callers in Canada): 1-855-669-9657
Intl. Dial-In: 1-412-902-4216

A playback of the call will also be available on the Investor Relations page of each company's website after the conclusion of the call.

**Advisors**

J.P. Morgan Securities LLC is serving as financial advisor to Cabot and Baker Botts L.L.P. is serving as its legal counsel. Tudor, Pickering, Holt & Co. is serving as financial advisor to Cimarex and Wachtell, Lipton, Rosen & Katz is serving as its legal counsel.

**About Cabot Oil & Gas**

Cabot Oil & Gas Corporation, headquartered in Houston, Texas is a leading independent natural gas producer, with its entire resource base located in the continental United States. For additional information, visit the Company's homepage at www.cabotog.com.

**About Cimarex Energy**

Cimarex Energy Co. is an independent oil and gas exploration and production company with principal operations in the Permian Basin and Mid-Continent areas of the U.S.

## II.    The Registration Statement Omits Material Information

25.    On June 29, 2021, Defendants filed a materially incomplete and misleading Registration Statement with the SEC. The Individual Defendants had a duty to carefully review the Registration Statement before it was filed with the SEC and disseminated to Cimarex's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for Cimarex's shareholders to make an informed decision in connection with the Proposed Merger.

A.    <u>The Misleadingly Incomplete Financial Projections</u>

26.    The Registration Statement omits material information regarding the financial projections for Cimarex and Cabot and relied upon by TPH in its analyses. The Registration

Statement provides values for non-GAAP financial metrics, including EBITDAX, Free Cash Flow, and Total Capital Expenditures, but fails to provide line items used to calculate these metrics.

27.      The projections served as a primary reason for the Board to approve the Proposed Merger and for TPH to find the Merger Consideration "fair" to Cimarex shareholders. The information is plainly material and speaks squarely to the question that the Company's shareholders must answer in determining whether to vote in favor of the Proposed Merger: Is the Merger Consideration more or less valuable than a full stake in the standalone company? Without the material information regarding the projections, Defendants present the Company's shareholders with only a fraction of the equation, rendering them unable to answer this question and assess the fairness of the Proposed Merger. Thus, the omitted information is plainly material to shareholders and must be disclosed.

28.      With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. Accordingly, Defendants have disclosed some of the valuation information relied upon by TPH and the Board but have failed to disclose the material information regarding the projections. These omissions render the summary of Cimarex's value and financial picture in the Registration Statement misleadingly incomplete.

B.      The Misleadingly Incomplete Summary of TPH's Valuation Analyses

29.      The Registration Statement describes TPH's fairness opinion and the various valuation analyses performed in support of its opinion.  Defendants concede the materiality of this information by including the fairness opinion and valuation analyses among the "positive or favorable" factors considered in recommending the Proposed Merger. Registration Statement at 97, 100.  However, the summary of TPH's fairness opinion and analyses provided in the

Registration Statement fails to include key inputs and assumptions underlying the analyses. Without this information, as described below, Cimarex shareholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on the fairness opinions in determining whether to vote in favor of the Proposed Merger. This omitted information, if disclosed, would significantly alter the total mix of information available to Cimarex's shareholders.

30.     In summarizing TPH's *Net Asset Value Analysis*, the Registration Statement fails to disclose: (i) all line items used to calculate unlevered free cash flow, (ii) the individual inputs and assumptions underlying the discount rates, (iii) the values of the cash flows generated by the estimated proved developed reserves and undeveloped hydrocarbon resources, the future effects of hedging, and the effects of general and administrative expenses, taxes, and non-drilling and completion capital expenditures used in the analysis, and (iv) the net debt and preferred equity used in the analysis.

31.     In summarizing TPH's *Discounted Cash Flow Analyses*, the Registration Statement is materially misleading because it fails to disclose: (i) the terminal values used in the analyses, (ii) line items used to calculate unlevered free cash flow, (iii) the individual inputs and assumptions underlying the discount rate range and multiples range used in the analyses, and (iv) the net debt, preferred equity and number of fully-diluted outstanding shares used in the analyses.

32.     In summarizing TPH's *Has/Gets Analysis – NAV Accretion*, the Registration Statement does not disclose: (i) the estimated fees and expenses related to the Proposed Merger, (ii) the inputs and assumptions underlying the discount rates, and (iii) the pro forma share count.

33.     The summary of TPH's *Equity Research Analysts' Price Targets* in the Registration Statement fails to disclose: (i) the price targets observed, and (ii) the sources of the

information observed.

34.     These material omissions render the summary of TPH's valuation analyses included in the Registration Statement misleadingly incomplete.

35.     Absent disclosure of the foregoing material information prior to the Shareholder Vote, Plaintiff will be unable to make an informed decision regarding the Proposed Merger, and is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I
### Against All Defendants for Violations of Section 14(a) of the Exchange Act

36.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

38.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

39.     The omission of information from a proxy will violate Section 14(a) if other SEC regulations specifically require disclosure of the omitted information.

40.     Defendants have issued the Registration Statement with the intention of soliciting Cimarex's common shareholders' support for the Proposed Merger.  Each of the Individual Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, among other things: (i) financial projections for Cimarex and Cabot, and (ii) TPH's valuation analyses performed in support of its fairness opinion.

41.     In so doing, Defendants made misleading statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated in or omitted from the Registration Statement, but failed to obtain and disclose such information to Cimarex's shareholders, though they could have done so without extraordinary effort.

42.     The Individual Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading.  As officers or directors of the Company and signatories to the Registration Statement, the Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve the Proposed Merger and solicit shareholder consent; indeed, the Registration Statement states that TPH reviewed and discussed its financial analyses with the Board, and further states that the Board considered the financial analyses provided by TPH as well as its fairness opinion and the assumptions made and matters considered in connection therewith.  Further, the Individual

Defendants were privy to and had knowledge of the financial projections and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be misleadingly incomplete.  Indeed, the Individual Defendants were required to review the financial analyses in connection with their receipt of the fairness opinion, question TPH and as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

43.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in: (i) their decision to omit material information from the Registration Statement; or (ii) their failure to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as Cimarex's officers and directors.

44.     Cimarex is also deemed negligent as a result of the Individual Defendants' negligence in preparing and/or reviewing the Registration Statement.

45.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to make an informed decision on the Proposed Merger if such misrepresentations and omissions are not corrected prior to the special meeting of Cimarex's shareholders.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable

injury that Defendants' actions threaten to inflict.

<u>**COUNT II**</u>
**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

46.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47.     The Individual Defendants acted as controlling persons of Cimarex within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers or directors of Cimarex, and participation in and/or awareness of Cimarex's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Cimarex, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

48.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Cimarex, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of the Board to approve the Proposed Merger.

50.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the

Merger Agreement.  The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

53.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily enjoining Defendants and all persons acting in concert with them from consummating the Proposed Merger, until Defendants disclose the material information discussed above which has been omitted from the Registration Statement;

B.     Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 3, 2021

**MONTEVERDE & ASSOCIATES PC**

*/s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*